UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GARY KREBSBACH,                                    Case No. 24-CV-2241 (PJS/SGE)

              Plaintiff,

v.                                                 ORDER

STATE FARM FIRE AND CASUALTY
COMPANY,

              Defendant.

Justice Ericson Lindell, GREENSTEIN SELLERS PLLC, for plaintiff.

Lindsey A. Streicher and Scott G. Williams, HAWS-KM, P.A., for
defendant.

Plaintiff Gary Krebsbach brought this breach-of-contract action against

defendant State Farm Fire and Casualty Company ("State Farm") seeking to recover

benefits under a homeowner's insurance policy after sustaining hail damage to his roof.

Both parties have moved for summary judgment.  ECF Nos. 39, 46.  For the reasons that

follow, the Court grants State Farm's motion and denies Krebsbach's.

## I.  BACKGROUND

### A.  The Policy

Krebsbach owns a large home in Arden Hills, Minnesota with a complex, cedar-

shake roof.  *See* Krebsbach Decl. ¶ 2, ECF No. 48.  The roof was damaged by a hailstorm

on May 19, 2022.  Krebsbach Decl. ¶ 3–5; Compl. ¶ 9, ECF No. 1-1.  At the time, the

home was insured under a homeowner's policy issued by State Farm.  Streicher Decl.

Ex. A at SF0440, ECF No. 42-1 ("Policy").[1]

The Policy's loss-settlement provisions are at the center of this dispute.

Following a covered loss, State Farm must first pay the actual cash value ("ACV") of the

damaged property, minus any deductible.  Policy at SF0473.  The ACV is defined as

"the value of the damaged part of the property at the time of loss, calculated as the

estimated cost to repair or replace such property, less a deduction to account for pre-

loss depreciation."  *Id.* at SF0498.  Typically, a policyholder will use the ACV payment

as seed money to fund repairs and then seek reimbursement from State Farm once

repairs are completed.  At that point, State Farm must indemnify the homeowner for

what he actually paid to repair or replace the damaged property—what is known as the

"replacement cost value" or RCV.  *See id.* at SF0473 ("[Insurer] will pay the covered

additional amount [the insured] actually and necessarily spend[s] to repair or replace

the damaged part of the property[.]").[2]

---

[1]Both parties submitted copies of the Policy with their motions.  *See* Streicher
Decl. Ex. A; Krebsbach Decl. Ex. A.  To avoid confusion, the Court cites to the Bates-
stamped pages of the Policy attached as Exhibit A to the August 7, 2025, declaration of
Lindsey A. Streicher.

[2]The Court previously explained how the "typical replacement-cost policy"
functions in *Selective Insurance Company of South Carolina v. Sela*, 455 F. Supp. 3d 841, 844
(D. Minn. 2020).  The ACV reflects the amount an "insurer must pay no matter what,"
while the RCV reflects a conditional payment that an "insurer must pay only if the
(continued...)

Critically for this case, State Farm's obligation to make the second payment—i.e., the RCV payment—is expressly conditioned on the policyholder doing two things: First, the insured must "complete the actual repair or replacement of the damaged part of the property within two years after the date of loss." *Id.* Second, the insured must "notify [State Farm] within 30 days after the work has been completed." *Id.* Unless and until the policyholder satisfies both conditions, State Farm is obligated to "pay only the actual cash value of the damaged property." *Id.*

The Policy also describes an appraisal process that the parties must follow if they "fail to agree on the amount of loss." *Id.* at SF0476. As relevant here, the appraisal provision provides:

> *You* must comply with **SECTION I — CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.
>
> a.  Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

---

[2](...continued)
insured repairs or replaces the property." *Id.*

*Id.; see also id.* at SF0475–76 ("Your Duties After Loss") (obligating the insured to "submit to [State Farm], within 60 days after the loss, [a] signed, sworn proof of loss" setting forth, among other things, "detailed estimates for repair of the damage" and "an inventory of damaged . . . personal property").

### B. The Loss

As noted, Krebsbach's home was damaged by hail on May 19, 2022. Krebsbach Decl. ¶ 3–5; Compl. ¶ 9. The parties dispute when Krebsbach first notified State Farm of his loss. Krebsbach says that he notified his State Farm agent sometime during the summer of 2022 after noticing that cedar shakes were falling from his roof. Krebsbach Decl. ¶ 5. State Farm, for its part, says that Krebsbach did not report the loss until October 6, 2022. Def.'s Reply at 2, ECF No. 52; Streicher Decl. Ex. B (claim log listing October 6, 2022, as the "Date Reported").[3]

---

[3]The record is unclear about the exact date—or even the exact month—of Krebsbach's initial report. *Compare* Pl.'s Mem. at 2 ("In September 2022, Krebsbach informed State Farm of the hail damage to his roof."); *id.* at 3 (stating that the loss was reported "within the first few months" after the storm); Krebsbach Decl. ¶ 5 (stating the loss was reported "[i]n the summer of 2022"); *with* Def.'s Reply at 2 (characterizing Krebsbach's assertion that "State Farm did not inspect the property 'until several months'" after the claim was reported as "patently false") (emphasis omitted). For purposes of ruling on State Farm's summary-judgment motion, the Court assumes that Krebsbach reported the loss sometime in the summer of 2022, as he claims. *See, e.g., Coffey v. Comm'r of Internal Revenue*, 987 F.3d 808, 811–12 (8th Cir. 2021) ("Summary judgment may be appropriate where the parties dispute facts, so long as the court assumes as true the facts alleged by the nonmoving party for the purposes of the motion.").

On October 13, 2022, State Farm sent an adjuster to inspect the roof.  Pl.'s Mem. at 3, ECF No. 45.  The adjuster estimated the ACV as $3,721.77, which represented an estimated RCV of $4,165.70 minus an estimated $443.93 for depreciation.  *See* Streicher Decl. Ex. C at SF0263.  Because the ACV did not exceed the $11,743.00 deductible, State Farm advised Krebsbach that it would not issue a payment on his claim.  Streicher Decl. Ex. E at SF0019.  State Farm also reminded Krebsbach that he could recover the RCV once he completed repairs and noted that he should contact his claim specialist if he "obtain[ed] an estimate that exceed[ed] the estimate" prepared by State Farm.  *Id.*

Dissatisfied with State Farm's estimate, Krebsbach asked State Farm to send a different adjuster to perform a second inspection.  Pl.'s Mem. at 3–4; Krebsbach Decl. ¶¶ 11–13.[4]  That second inspection took place in late October 2022, but Krebsbach was again dissatisfied because, he contends, the adjuster "did not inspect the entire roof" and the adjuster's estimate (which matched the first adjuster's estimate) failed to take into account hail damage to the cedar shakes.  *See* Krebsbach Decl. ¶¶ 6–7 (noting State

---

[4]There is some dispute as to whether and when any subsequent inspections took place.  *Compare* Krebsbach Decl. ¶¶ 11–13 (stating a total of three inspections occurred where "the same findings were reported"), *with* Def.'s Mem. at 7 (denying that any additional inspections occurred, but noting that the dispute "is not material, as these inspections or rejections of inspections took place in fall of 2022 and also did not yield any change in State Farm's position").  This dispute is immaterial, however, because State Farm never altered its position at any point during the claims-handling process.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted [to preclude summary judgment].").

Farm's initial estimate "only included damage to the roof vents, rain caps and gutter downspouts"), ¶ 12 (noting that "the same inspector came out again and reported the same findings").

Around the same time, Krebsbach engaged Bison Builders ("Bison") to inspect the roof and to prepare an estimate. Krebsbach Decl. ¶¶ 9–10; Bergland Decl. ¶¶ 3–7. Bison's estimate, submitted to State Farm on November 1, 2022, valued the repairs that had to be done to the roof at $211,871.39. Bergland Decl. Ex. B at SF0330. Within a few days, State Farm rejected Bison's estimate and confirmed that it continued to estimate the ACV as $3,721.77 and the RCV as $4,165.70. Streicher Decl. Ex. D at SF0322 (explaining that Bison's photos "depict[ed] damage resulting from wear, tear and deterioration," a cause of loss not covered by the Policy); *see also* Bergland Decl. ¶¶ 10–11, Ex. C.

As of early November 2022, then, the parties knew that there was a very large gap between State Farm's estimate and Krebsbach's. Oddly, though, aside from brief correspondence between Bison and State Farm in April 2023,[5] nothing happened for the next 15 months. Krebsbach says that shakes continued falling from his roof throughout the summer and fall of 2023, yet Krebsbach did nothing until February 2024, when he

---

[5]On April 19, 2023, Bison resubmitted to State Farm the photographs and estimate from November 2022. Streicher Decl. Ex. I at SF0270; Bergland Decl. ¶¶ 12–13, Ex. D. Because it did not receive any new information, State Farm maintained its position. Streicher Decl. Ex. K at SF0320.

engaged a new contractor.  Krebsbach Decl. ¶¶ 15–17.  The new contractor, Classic

Construction, submitted its repair estimate to State Farm on April 8, 2024, in an amount

exceeding $1.4 million—which was more than six times Bison's estimate and more than

336 times State Farm's.  Streicher Decl. Ex. L at KREBSBACH000040.  State Farm

rejected the estimate on April 18, 2024, and Krebsbach formally demanded appraisal the

next day—one month before his two-year period to complete repairs expired.  Hagen

Decl. ¶ 5; Krebsbach Decl. ¶¶ 18–20, Ex. D.  After State Farm failed to promptly respond

to his appraisal demand, Krebsbach retained counsel on May 15, and Krebsbach filed

this lawsuit the following day.  Krebsbach Decl. ¶¶ 21–23; *see also* Policy at SF0476.

On May 23, 2023, State Farm notified Krebsbach that, before it would move

forward with an appraisal, Krebsbach would have to file a sworn proof of loss.  Ex. O at

SF0036.  Krebsbach submitted a sworn proof of loss later that day, and the following

day (May 24, 2023), State Farm notified Krebsbach that it had appointed John Foster as

its appraiser.  *Id.*; Streicher Decl. Ex. N at SF0026.  The appraisal went forward on July

25, 2024, with a three-appraiser panel determining that the ACV was $164,690.00 and

the RCV was $426,543.31.  Streicher Decl. Ex. P at SF0533.  Two days later, State Farm

issued a payment to Krebsbach in the amount of $152,947.00, which represented the

ACV determined by the panel ($164,690.00) minus Krebsbach's deductible ($11,743.00).

Krebsbach Decl. ¶ 28; Streicher Decl. Ex. Q at SF0531.

Again, under the Policy, Krebsbach was not entitled to recover RCV benefits unless he "complete[d] the actual repair or replacement of the damaged part of the property within two years after the date of loss." Policy at SF0498. Despite the fact that more than two years had passed since the date of loss (May 19, 2022), and despite the fact that State Farm notified Krebsbach that he had "$0" remaining for "Replacement Cost Benefits," Krebsbach submitted to State Farm a contract for repair work reflecting the RCV determined by the appraisal. Streicher Decl. Ex. Q at SF0531, Ex. S at SF0418; Krebsbach Decl. ¶¶ 30–31, Ex. I. A State Farm claim specialist notified Krebsbach's attorney that no RCV benefits would be paid even if Krebsbach completed the repairs because "the two year period established in the policy to recover the replacement value for a claim" had expired. Streicher Decl. Ex. T at SF0400–403.

The only question for this Court, then, is whether State Farm is required to pay RCV benefits to Krebsbach. Both parties move for summary judgment on that issue.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When ruling on a summary-judgment motion, the Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in his favor. *Wobig v. Safeco Ins. Co. of Ill.*, 40 F.4th 843, 847 (8th Cir. 2022).

Minnesota substantive law governs this diversity action. *See, e.g.*, *Corn Plus Coop. v. Cont'l Cas. Co.*, 516 F.3d 674, 678 (8th Cir. 2008). This Court is, of course, bound by the Minnesota Supreme Court's decisions regarding Minnesota law. *C.S. McCrossan Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019). But "[i]f the Minnesota Supreme Court has not spoken on a particular issue," the Court "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data" in its "attempt to predict how the Minnesota Supreme Court would decide [the] issue." *Id.* (quotation omitted) (cleaned up).

### B. Breach of Contract

Krebsbach argues that State Farm breached the insurance contract when it refused to pay RCV benefits. To recover for breach of contract under Minnesota law, Krebsbach must prove: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and

(3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011).

State Farm argues that Krebsbach is not entitled to recover RCV benefits because he failed to perform a condition precedent—specifically, the condition requiring him to complete repairs within two years of the date of loss. A condition precedent is "a contract term that calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which the promisor's obligation is made to depend." *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 27 (Minn. 2018) (quotation omitted) (cleaned up). When a condition precedent is neither satisfied nor excused, the party who was obligated to perform the condition cannot enforce the contract. *Id.* at 27; *see also Crossroads Church of Prior Lake MN v. Cnty. of Dakota*, 800 N.W.2d 608, 615 (Minn. 2011) ("[U]nfulfilled conditions prevent enforcement of a contract.").

Krebsbach concedes that the obligation to complete repairs within two years of the date of loss was a condition precedent to his recovery of RCV benefits and that he failed to perform that condition. But Krebsbach argues that his performance of the condition should be excused. The failure to perform a condition precedent may be excused if performance was "hindered or rendered impossible by the other party," *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 46 (Minn. 1984), or if the other party

commits an earlier, material breach, *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 534 (Minn. 2003). Krebsbach argues that he should be excused from satisfying the two-year repair condition because (1) State Farm breached the Policy by undervaluing his claim, and (2) State Farm hindered his performance by delaying the claim-handling process. The Court examines each argument in turn.

1. Condition Excused by Preceding Breach Undervaluing Loss

"Under Minnesota law, a material breach by one party may excuse the performance of another." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 572 F.3d 532, 537 (8th Cir. 2009). Krebsbach contends that State Farm materially breached the Policy by failing to "adjust all losses . . . and to pay for the storm damage to his property," thereby excusing his compliance with the two-year repair condition. Pl.'s Mem. at 8–9 (quoting Policy at SF0477).

The Court disagrees. An insurer breaches an insurance contract when it "refuses to pay or unreasonably delays payment of an *undisputed* amount." *Olson v. Rugloski*, 277 N.W.2d 385, 387 (Minn. 1979) (emphasis added). This is not such a case. At all times, State Farm acknowledged that it was obligated to pay to repair the damage caused by the hailstorm.[6] The parties simply disagreed about the amount of that (covered) loss.

---

[6]To the extent that Krebsbach suggests that State Farm's disagreement with his estimates was a denial of *coverage*, his suggestion is unsupported by the record. State Farm's position that certain claimed damage to the cedar shakes resulted from ordinary

(continued...)

Courts routinely reject efforts to repackage *valuation* disputes (which are an ordinary and anticipated feature of claim processing) as *coverage* disputes (which may give rise to a breach-of-contract claim).  Where an insurer wrongfully denies coverage, courts are more willing to excuse an insured's noncompliance with a repair deadline because the insured's performance may be "impossible, or at least unduly risky" without advance payment of the ACV or an insurer's commitment to pay for the repairs.  *Utica Mut. Ins. Co. v. Cincinnati Ins. Co.*, 362 F. Supp. 3d 265, 269 (E.D. Pa.

---

[6](...continued)
wear and tear—and therefore fell outside the scope of the Policy's coverage—reflected a disagreement about the *amount* of loss caused by the hailstorm, not a disagreement about whether any such loss was *covered*.  *See* Streicher Decl. Ex. D at SF0322; *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (concluding that assessing the "'amount of loss' necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss"); *Martinique Props., LLC v. Certain Underwriters at Lloyd's London Subscribing to Pol'y No. W1551E160301*, 567 F. Supp. 3d 1099, 1107 (D. Neb. 2021) ("A dispute over the value of property or amount of loss is distinct from a dispute over whether the insurance policy covers the damage in the first place.").

2019).[7] But where, as here, the insurer acknowledges coverage and disputes only the amount of the covered loss, courts tend to strictly enforce repair deadlines.[8]

This case falls squarely into the latter category. Again, State Farm never denied that it was obligated to pay for whatever damage had been caused by the hailstorm. The parties simply disagreed about the extent of that damage. This was a valuation dispute—a type of dispute that is so common that the Policy provided an appraisal process for resolving it. Policy at SF0476 (detailing an appraisal mechanism to be invoked if the parties "fail to agree on the amount of loss").[9] Accordingly, Krebsbach

---

[7]*See, e.g., id.* at 269–70 (E.D. Pa. 2019) (observing that, when coverage is denied, an insured faces an "'unsavory' choice" between undertaking costly repairs without assurance of reimbursement or limiting his recovery to the ACV if the insurer is later found liable on the claim); *New Oil Christian Ctr. v. GuideOne Mut. Ins. Co.*, No. 22-CV-2136 (MJD/ECW), 2025 WL 642914, at \*5 (D. Minn. Feb. 27, 2025) (permitting the insured to recover the RCV awarded at appraisal when the insurer "repeatedly denied any coverage for over a year").

[8]*See, e.g., Utica Mut. Ins. Co.*, 362 F.Supp.3d at 269–70; *Kaw Drive, LLC v. State Auto Prop. & Cas. Ins. Co.*, 634 F. Supp. 3d 1030, 1034–35 (D. Kan. 2022) (rejecting the argument that "the actual cash value payment must be 'adequate' to trigger the insured's duty to complete repairs or replacements"); *Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1064 (8th Cir. 2017) (applying Missouri law and holding that an insured's "assertions of general dissatisfaction in the manner with which [an insurer] handled its claim" did not constitute a breach that could excuse compliance with a time-limited repair condition).

[9]*See also PSS Props., LLC v. North Star Mut. Ins. Co.*, 999 N.W.2d 902, 905–06 (Minn. Ct. App. 2023) (concluding that an appraisal award exceeding the insurer's estimate does not amount to a determination that the insurer breached the policy); *Selective Ins. Co. of S.C. v. Sela*, 413 F. Supp. 3d 861, 864 (D. Minn. 2019) ("Policyholders
(continued...)

cannot rely on the dispute over the valuation of his claim to excuse his noncompliance with the two-year repair condition.

### 2. Condition Excused by Delays Hindering Performance

Krebsbach separately contends that "State Farm's actions in delaying the claim process" hindered his ability to complete repairs within two years. Krebsbach Decl. ¶ 135. Every contract in Minnesota contains an "implied condition that each party will not unjustifiably hinder the other from performing." *Zobel & Dahl Constr.*, 356 N.W.2d at 45. "Similarly, . . . [a] party to a contract cannot take advantage of the failure of a condition precedent when the party itself has frustrated performance of that condition." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995).

That principle has limits, however. An insurer's conduct "can be such as to estop that [insurer] from asserting a time limitation contained in an insurance policy" only when it "would be 'unjust, inequitable, or unconscionable to allow the defense to be

---

[9](...continued)
have been making claims—and insurers have been denying claims—since Minnesota became a state in 1858."); *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 573 (8th Cir. 2017) (concluding, in the class-certification context, that "State Farm's method of determining estimated 'actual cash value' does not breach its replacement cost contract"); *Manitou Vill. Chalet Townhomes v. Harleysville Ins. Co.*, No. 12-CV-0386 (JNE/FLN), 2013 WL 1881056, at *3 (D. Minn. Mar. 29, 2013), *report and recommendation adopted*, 2013 WL 1881605 (D. Minn. May 6, 2013) (concluding that insurer had not "breached any contractual or other legal duty to its insured" when it did not deny coverage, "proceeded with the appraisal process set forth in their policy," and "paid the remaining [ACV] amount owed within five days" of the appraisal award's finalization).

interposed.'"  *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn. 1987) (quoting 18A G. Couch, *Couch on Insurance 2d* § 75:195 (1983)).

### a.  Initial Inspection and Rejection of Estimates

Krebsbach alleges that State Farm "dragged its feet at all stages of the claim" by failing to properly inspect his roof in 2022 and by rejecting the contractor estimates submitted in 2022, 2023, and 2024.  Pl.'s Mem. at 14, 9–10.  As an initial matter, the Court is quite certain that the Minnesota Supreme Court would not hold that an insurer must approve its insured's preferred estimate or contractor—no matter the amount of the estimate, and no matter the skill, experience, or reputation of the contractor.  Courts in Minnesota have been loathe to hold that the parties to an insurance contract have *any* duties beyond those imposed by the language of the contract itself.  *See, e.g., Selective Ins. Co. of S.C. v. Sela*, 413 F. Supp. 3d 861, 864 (D. Minn. 2019) (rejecting the argument that "every contract of insurance . . . imposes a broad duty on insurers to act 'reasonably' or 'properly' in handling claims").

More fundamentally, though, any delays attributable to State Farm are dwarfed by the delays attributable to Krebsbach.  By November 2022, Krebsbach knew that the estimates of State Farm's assessors and Krebsbach's contractor were miles apart.  Yet during the next 15 months or so, Krebsbach took no meaningful steps toward resolving that dispute or repairing his roof.  Despite the fact that, according to Krebsbach, he

spent much of 2023 watching cedar shakes fall off his roof, Krebsbach sat on his hands. Not until April 19, 2024, did Krebsbach ask for an appraisal.

As far as the record reflects, absolutely nothing prevented Krebsbach from asking for an appraisal as early as November 2022 instead of waiting until April 2024, one month before the expiration of his two-year repair deadline. No reasonable jury could find that Krebsbach was prevented from meeting the two-year deadline because of delays caused by State Far.

### b. *Response to Appraisal Demand*

Krebsbach also makes much of State Farm's failure to identify its appraiser within 20 days of his written demand for appraisal, which, again, he made on April 19, 2024. This argument fails for a threshold reason: Krebsbach has not shown that State Farm's response was tardy in the first place. The Policy provides that Krebsbach must comply with all "Duties After Loss"—including submitting a "signed, sworn proof of loss"—*before* making a demand for appraisal. Policy at SF0475–76. Yet State Farm asserts that Krebsbach did not submit a "signed, sworn proof of loss" until May 23, 2024, over a month *after* Krebsbach demanded appraisal, and nothing in the record contradicts State Farm's assertion. Streicher Decl. Ex. N at SF0026. So State Farm's 20-day deadline to identify an appraiser began running on May 23, not April 19. Moreover, instead of waiting until June 12, 2024 to identify its appraiser—as it had the

right to do—State Farm identified its appraiser *the next day*.  Krebsbach therefore cannot show that State Farm's response to his appraisal demand was delayed.

The Court notes that, even if Krebsbach was correct and State Farm's 20-day deadline began to run on April 19, 2024, State Farm would have had the right to wait until May 9, 2024 to identify its appraiser.  May 9 was just 10 days before expiration of Krebsbach's two-year repair deadline.  No reasonable jury could find that, had State Farm identified an appraiser on May 9, the appraisal could have been completed, Krebsbach could have retained a contractor, and the contractor could have completed almost a half million dollars in repairs to a complicated cedar-shake roof *within 10 days*.  Moreover, the Policy itself contemplates that the appraisal process will take some time—and the Policy does not toll the two-year repair deadline while the appraisal is taking place.  Policy at SF0476–77; *see also Colby Lake Fourth Ass'n v. Hiscox Ins. Co.*, No. A23-0201, 2023 WL 6387234, at *4 (Minn. Ct. App. Oct. 2, 2023) ("The policy language does not contemplate events, such as an appraisal, that would change the [repair-or-replacement] requirements under the policy.").

In sum, Krebsbach has not shown that any delays caused by State Farm made it impossible—or even slightly more difficult—for Krebsbach to complete the repairs within two years of the date of loss.  Krebsbach missed the deadline because he sat on his hands for 15 months, not because of any delay attributable to State Farm.  Enforcement of the two-year condition is therefore neither unjust nor inequitable.

Because Krebsbach failed to perform that condition precedent, and because his failure is

not excused, he is not entitled to any additional recovery from State Farm.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Defendant's motion for summary judgment [ECF No. 39] is GRANTED.

2.      Plaintiff's motion for summary judgment [ECF No. 46] is DENIED.

3.      Plaintiff's complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE

        AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 25, 2026                    /s/ Patrick J. Schiltz
                                         Patrick J. Schiltz, Chief Judge
                                         United States District Court